USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/12/2010

**C/o HUELBIG DOC PREP CORPORATION**
**Dennis Huelbig, Authorized Agent, Trustee**
**110 Wall Street, 11th FL.**
**New York, N.Y. 10005**
**212-709-8141**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **DENNIS J. HUELBIG JR.,**<br>**Plaintiff,**<br><br>-against-<br><br>**AURORA LOAN SERVICES L.L.C., FIRST MAGNUS FINANCIAL, CITI MORTGAGE, and MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.**<br>**Defendant.** | **No. 10 Civ. 06215 (RJH) (THK)**<br><br>**PLAINTIFFS AMENDED COMPLAINT UNDER SECURITIES EXCHANGE ACT OF 1934-CHURNING OF ACCOUNT AND RELATED COUNTS**<br><br>**JURY DEMAND** |

Plaintiff, DENNIS J. HUELBIG JR. ("Huelbig"), for its complaint against defendant AURORA LOAN SERVICES L.L.C. ("Aurora"), FIRST MAGNUS FINANCIAL ("First Magnus"), CITI MORTGAGE ("Citi"), MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. ("Mers"), alleges as follows:

**PARTIES**

1. At all relevant times, Plaintiff maintains residency and operates and conducts Office of the "Trustee" in the ordinary course of daily business in New York.

2. Plaintiff is a "Person" as defined in *26 U.S.C. §7701 (1)* and in fact a "non-resident alien" as defined in *26 U.S.C. §7701 (b) (1) (B)* and not an "individual" as defined in *8 U.S.C. §1401* and maintains Foreign Agent Status.

3. Plaintiff is informed and believes, and on that basis alleges that, at all relevant times, defendant(s) Aurora, First Magnus, Citi, Mers, were corporation(s) organized and operating under the laws of the United States of America, and were duly licensed to engage in the business of securities broker, securities broker, securities dealer, and investment adviser, and was a member firm of the National Stock Exchange Inc., and the

1

National Stock Exchange Inc., subject to their respective Constitutions and Rules, as well as a member of the Securities Exchange Commission subject to its Rules.

4. Plaintiff is informed and believes, and on that basis alleges that, at all relevant time's defendant(s) Aurora, First Magnus, Citi, Mers, were registered representative(s), engaged in business as a securities salesperson, and an officer(s) and employee(s) of Aurora, First Magnus, Citi, and Mers.

5. At all relevant times defendant(s) Aurora, First Magnus, Citi, and Mers acted as a debt collector for a "Mortgage Debt", duly authorized to conduct business in the United States of America duly licensed to engage in the business of securities broker and securities dealer, and was a member firm of the National Stock Exchange, Inc., the National Stock Exchange, Inc., subject to their respective Constitutions and Rules, as well as a member of the Securities Exchange Commission, subject to its Rules.

6. All of the defendants maintained their offices for the transactions of their business at: 2617 College Park, Scottsbluff, Nebraska, 69363, 10350 Park Meadows Drive, Littleton, CO. 80124, 5210 E. Williams Circle, Ste. 750, Tucson, AZ. 85711, 1000 Technology Drive, O'Fallon, MO. 63368, G4318 Miller Road, Flint, MI. 48507 within the territorial confines of the United States of America.

7. At all relevant times, defendant's officers and directors acted as clearing agent for defendant(s) Aurora, First Magnus, Citi, and Mers cleared all of Aurora, First Magnus, Citi and Mers transactions for Huelbig, a customer.

## JURISDICTION

8. The Trustee brings this action pursuant to the authority conferred by *Section 21(d)* of the Exchange Act *15 U.S.C. §78u(d)* seeking to restrain and enjoin permanently Aurora, First Magnus, Citi, Mers from violating Section 14(a) of the Exchange Act *15 U.S.C. § 78n(a)* and *Rule 14a-9* thereunder *17 C.F.R. §240.14a-9*. The Trustee also seeks a final judgment ordering Aurora, First Magnus, Citi, Mers to pay a civil money penalty pursuant to *Section 21(d)(3)* of the Exchange Act *15 U.S.C. §78u(d)(3)* and such equitable and other relief that may be appropriate or necessary for the benefit of investors *15 U.S.C. §78u(d)(5)*.

9. This action arises under the *Securities Act of 1933* and the *Securities Exchange Act of 1934*, as amended, and *Rules 10b-5* of the General Rules and Regulations promulgated by

the *Securities and Exchange Commission, Rule 12(2)* of the Rules of the *Exchange Act Rule 20(a)* of the Rules of the National Stock Exchange, so that this court has jurisdiction over the matter under *15 U.S.C. §§ 77v, 78aa* and *28 U.S.C. § 1331* as well as the principles of supplemental jurisdiction.

## HISTORY ON SECURITIZATION

10. The traditional mortgage model involved a bank originating a loan to borrower/homeowner and retaining the credit (default) risk. With the advent of securitization, the traditional model has given way to the "originate to distribute" model, in which banks essentially sell the mortgages and distribute credit risk to investors through mortgage-backed securities. Securitization meant that those issuing mortgages were no longer required to hold them to maturity. By selling the mortgages to investors, the originating banks replenished their funds, enabling them to issue more loans and generating transactions fees. This created a moral hazard in which and increased focus on processing mortgage transactions was incentivized but ensuring their credit quality was not. [1],[2]

11. Securitization accelerated in the mid-1990. The total amount of mortgage-backed securities issued almost tripled between 1996 and 2007, to $7.3 trillion. The securitized share of subprime mortgages (i.e., those passed to third-party investors via MBS) increased from 54% in 2001, to 75% in 2006. [3] American homeowners, consumers, and corporations owed roughly $25 trillion during 2008. American banks retained about $8 trillion of that total directed as traditional mortgage loans. Bondholders and other traditional lenders provided another $7 trillion. The remaining $10 trillion came from securitization markets. The securitization markets started to close down in the spring of 2007 and nearly shut-down in the fall of 2008. More than a third of the private credit markets thus became unavailable as a source of funds. [4],[5] In February 2009, Ben Bernanke stated that securitization markets remained effectively shut, with the exception of conforming mortgages, which could be sold to Fannie Mae and Freddie Mac. [6]

12. A more direct connection between securitization and the subprime crisis relates to a fundamental fault in the way that underwriters, rating agencies and investors modeled the correlation of risks among loans in securitization pools. Correlation modeling-determining how the default risk of one loan in a pool is statistically related to the default

3

risk for other loans-was based on a "Gaussian copula" technique developed by statistician David X. Li. This technique, widely adopted as a means of evaluating the risk associated with securitization transactions, used what turned out to be an overly simplistic approach to correlation. Unfortunately, the flaws in this technique did not become apparent to market participants until after many hundreds of billions of dollars of ABS and CDOs backed by subprime loans had been rated and sold. By the time investors stopped buying subprime-backed securities, which halted the ability of mortgage originators to extend subprime loans; the effects of the crisis were already beginning to emerge. (7)

13. Nobel laureate Dr. A. Michael Spence wrote: "Financial innovation, intended to redistribute and reduce risk, appears mainly to have hidden it from view. An important challenge going forward is to better understand these dynamics as the analytical underpinning of an early warning system with respect to financial instability." (8)

14. Both government failed regulation and deregulation contributed to this crisis. In testimony before Congress both the Securities and Exchange Commission (SEC) and Alan Greenspan conceded failure in allowing the self-regulation of investment banks.(9)(10)

## STATEMENT OF FACTS

15. On or about April 5th 2007, Defendant assigned the property to itself through a "Corporate Assignment" a transaction that took place at arm's length; alleging Plaintiff was "Grantor" with the Defendants on real property which is situated in Florida.

16. Plaintiff is represented by Dennis Huelbig, Secured Party Creditor and Trustee of the "D HUELBIG JR TRUST", duly authorized by the Internal Revenue Service to act on all matters regarding the appropriation and administration of the estate.

17. On or about April 7th 2007, Defendants filed a foreclosure action against the Plaintiff on the property, however, this action is a separate issue from the State foreclosure case; for the fact the on its face is a claim against illegal securitization of Unregistered Securities.

18. On or about April 7th 2007 through June 16th 2010 defendants alleged that they lost the note and or it was destroyed which both statements were unintelligible and ambiguous, fraudulent by knowing full well the note was securitized and sold in connection with a public offering.

4

19. On or about February 28th, 2010, Plaintiff was informed that the account on the said mortgage was securitized and sold on the New York Stock Exchange, however, it was upon the Plaintiffs discovery the account associated with the "Mortgage" and "Note" was pooled and being traded through a Fidelity Fund.

20. On or about October 28th 2009, Plaintiff securitized the said property, by preparing a Uniform Commercial Code Financial Statement filed with the Florida Secretary of State, which was a "fixture filling" and was perfected under U.C.C. Article 9.

21. On or about October 28th 2009, Plaintiff served actual and constructive notice to the Defendants regarding a letter of *"Notice of Right to Cancel"* under the *"Truth in Lending Act", 15 U.S.C. §1601 et seq; 12 C.F.R. Part 226)*, yet, Defendants ignored the Plaintiffs requests, which were based on the discovery of fraud, inducement, concealment, and fraudulent misrepresentation, civil conspiracy.

22. On or about February 28th 2010, Plaintiff discovered that the Defendants had acquired funds through the *"Discount Treasury Window"* and borrowed against the Plaintiffs Federal Reserve Bank Account #0210-0120-8/B6548XXXX (2nd District), associated with S.S.N. XXX-XX-2354 which both are jurisdictionally located in New York City.

23. On or about February 28th 2010, Plaintiff is informed and believes that the Defendants failed to claim the funds on the property by neglecting to file an Original Issue Discount with the Internal Revenue Service, and therefore, has abandoned the funds or has failed to appropriately report income from their hedging activity.

24. On many occasions Plaintiff requested validation of the debt and request various document in which the Defendants have failed to produce, i.e. *(FR2046)* OMB: 7100-0289 Accounting Statement *"Balance Sheet for Discount Window Borrowers"* to show the appropriation of the funds and location of the pooled securities, and as further required by the Board of Governors of the Federal Reserve System.

25. On or about June 12th 2010, Plaintiff conveyed the property into an existing "Express Trust" to solidify the true Secured Party Creditors position and interests.

26. At no time mentioned did the Defendants disclose the actions and procedures of the securitization process, nor did it disclose the benefits and disadvantages to hedging the account, nor did it provide a valid executed shareholder agreement, pledge agreement, or any disclosures in relation to the said Fidelity Fund.

5

27. At all relevant times, defendants, as a result of the control exercised over plaintiff's brokerage account, had a fiduciary duty and standard of care to plaintiff in all of their transactions with and for the plaintiff.

28. At all relevant times, defendants had the duty not to use or employ in connection with the purchase and sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of the Rules and Regulations promulgated by the Securities & Exchange Commission as necessary or appropriate in the public interest or for the protection of investors.

29. At all relevant times, defendants had the duty under the statutes, rules, and regulations cited above to use due diligence, to have learned the essential facts relative to plaintiff and to operate plaintiff's brokerage account in a fashion that would not cause an excessive trading or selling or purchasing securities without regard to plaintiff's situation and instructions.

30. At all relevant times, defendants had the common-law fiduciary duty, as well as the duty under the statues, rules, and regulations cited above, to recommend to plaintiff and to sell or purchase for plaintiff only those securities that they had reasonable grounds for believing were suitable for plaintiff on the basis of the facts disclosed by plaintiff to defendant regarding Huelbig and his financial situation and needs. Defendant also had the common-law fiduciary duty to have had reasonable grounds to believe that any sale or purchase of securities made by defendants for plaintiff's account was suitable for plaintiff on the basis of information furnished by plaintiff to defendants after reasonable inquiry concerning plaintiff's investment objectives, financial situation, needs and any other information known to defendants.

31. On or about June 26th 2006, Plaintiff obtained a certain line of credit a "Mortgage" which at all times relevant was a "Consumer Debt" from the defendant(s). This allegation supports an element of this cause of action, in that the transaction and account number was made in connection with a public offering.

32. On or about June 26th 2006, while Plaintiff obtained a certain line of credit from defendant. However, defendants' untruth or omissions of which the plaintiff did not know at the time of the offer or sale.

6

33. On or about June 26th 2006, Plaintiff after the creation of the account by the use of any means of interstate commerce of the mails, without a security agreement between the Plaintiff, with no fiduciary relation between the parties and Defendant initiated a business deal from arm's length, which constitutes the charge as concealment. *See Swinton v. Whitinsville Savings Bank, 42 N.E. 2d 808 (Mass. 1942),* concealment of the fact, without making any verbal misrepresentation. *See Osborn v. Gene Teague Chevrolet Co., 459 P.2d 988 (or 1969).*

34. It is a general rule of nondisclosure with a long list of exceptions, the last of which requires disclosure of "fact basic to the transaction, if the Defendant knows that the other is about to enter into it under mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." The provisions is illustrated as follows: A sells to B a dwelling house, without disclosing to B the fact that the Note was going to be sold to New York Stock Exchange and traded publicly in a pool of mortgages and due to accrue for up to the maturity of the Security Instrument, earning up to nine times the amount of the original note. *See Restatement (Second) of Torts §551*

35. Plaintiff only received partial disclosure in the Mortgage Instrument, as on covenant of the Contract states the Note may be sold but provides no specificity and extremely ambiguous; Even where there is no general duty to speak, partial disclosures are not allowed: "one who voluntarily elects to make a partial disclosure is deemed to have assumed a duty to tell the whole truth, i.e., to make full disclosure, even though the speaker was under no duty to make the partial disclosure in the first place." *See Union Pacific Resources Group, Inc. v. Rhone-Poulenc, Inc., 247 F.3 574, 584 (5th Cir. 2001).*

36. On or about June 26th 2006, defendants purchased for plaintiff's account #: **#2006101871** "Instrument" "*CORPORATE ASSIGNMENT OF MORTGAGE*"

| NAME OF STOCK | NUMBER OF SHARES | PRICE |
|---|---|---|
| **FIDELITY ADVISOR DIVERSIFIED STOCK O (MUTF) CUSIP NUMBER #316127106/FUND #6/SYMBOL=FDESX** | **Estimated at 11,000 plus** | **$12.82** |

37. During the period described above, the defendants wrongfully exercised control and dominion over plaintiff's brokerage account in violation of express conditions given to

defendants at the time that the account was opened. In particular, the defendants executed multiple separate transactions during this period.

38. By use of means and instrumentalities of interstate commerce and of the mails, and the facilities of National securities Exchanges, defendants employed a device, scheme, and artifice to defraud plaintiff, and defendants engaged in a practice and course of conduct that operated fraud on plaintiff in connection with the purchase and sale of securities. Among other things, defendants wrongfully manipulated plaintiff's account with excessive sell and buy orders in a manner disproportionate to its size, character, and the objectives and instructions of plaintiff, bought and sold securities within short periods of time, switched securities from one to another without any investment justification other than to generate brokerage commissions for defendants' profit, executed transactions in violation of plaintiff's specific instructions, continuously maintained plaintiff's account at maximum or near maximum allowable margin, thus endangering plaintiff's investments in any declining market, and used plaintiff's account in margin transactions to obtain maximum commissions on executed orders.

39. The actions of Defendants were not suitable to plaintiffs purchasing objectives, financial situation, and needs and were in violation of plaintiff's express instructions, the anti-fraud provisions of the statutes, rules, and regulations cited above.

40. In connection with the transactions described above, defendants failed in their fiduciary duty to plaintiff.

41. On or About April 7th 2007, Aurora, First Magnus, Citi, and Mers sold to Plaintiff an undisclosed number of shares of stock in a Fidelity Investments for an unknown price, plus commission and other fees.

42. Prior to Plaintiff discovering that Defendant had committed a conversion of a security instrument, Plaintiff received from a secure source a detailed report thereof an account being publicly trading and illegally withheld from Plaintiff.

43. Any written prospectus covering the shares offered and sold to Plaintiff failed to disclose that:

   a. Aurora, First Magnus, Citi, and Mers were very profitable and business was continuing to expand while it concealed the existence of an account, in the Plaintiff's possession with an unknown value as of the date of this complaint.

8

    b. Aurora, First Magnus, Citi, and Mers encumbered the said fund and had accounts receivable of in excess of accounts payable and other debts totaling $159,000.00 while failing to prove ownership.

44. Plaintiff still owns the subject shares of the Fidelity Investment Fund.

45. Defendant directly, by the use of a means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, intentionally devised, and schemed to artifice to defraud.

46. Defendant engaged in the act and practice during the ordinary course of business which operated fraud and deceit upon Plaintiff in connection with the purchase or sale of any security which violates *17 C.F.R. §240.10b-5 (1997)* also *See U.S. v. O'Hagan, 117 S. Ct. 2199, 2207, 138 L. Ed. 2d 724 (U.S. 1997)* the private right of action under section *10(b) and Rule 10b-5.*

47. Plaintiff has the remedial right and remedy under *U.C.C. 1-201 (32) (34)*, inter alia, to invoke their Right of Rescission as further evidence of the fraud committed.

48. By virtue of the foregoing conduct, Aurora, First Magnus, Citi, Mers; directly or indirectly, violated *Section 14(a)* of the Securities Exchange Act of 1934 ("Exchange Act") *15 U.S.C. §78n(a)* and *Rule 14(a)* thereunder *17 C.F.R. §240.14a-9.* Unless permanently restrained and enjoined, the Defendants will again engage in the acts and transactions set forth in this complaint or in acts and transactions of similar type and object.

### *FRAUD ON THE MARKET THEORY*

49. In *Basic*, supra note 2, the Supreme Court approving using the "fraud on the market" theory in federal securities cases. Quoting from *Peil v. Speiser, 806 F.2d 1154, 1160-1161 (3rd Cir. 1986)*, it observed:

> *"The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.....Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on*

*misrepresentation." See* generally *Fischel, Use of Modern Finance Theory in Securities Fraud Cases, 38 Bus. Law. 1 (1982) also See Gilson and Kraakman, The Mechanics of Market Efficiency, 70 Va. L. Rev. 549 (1984), See Kaufman v. I-Stat Corporation, 754 A.2d 1188 (N.J. 2000).*

50. "Failure of the Plaintiff to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent." *See Seeger v. Odell, 115 P.2d 977, 980 (Cal. 1941),* In *Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 528 (7th Cir. 1985)* explained the rule in holding that the failure of a trustee to investigate did not relieve the Defendant of liability for securities fraud.

*"Securities law seeks to impose on issuers duties to disclose, the better to obviate the need for buyers to investigate. The buyer's investigation of things already known to the seller is a wasteful duplication of effort. If the securities laws worked perfectly there would be little need for investigation; sellers would disclose to the buyer and the market the information necessary for informed trading. Because some frauds will not be caught, and because people cannot interpret information flawlessly, this mechanism cannot work perfectly."*

*"This failure makes investigations by investors necessary and creates incentives for sellers to hire certifiers (such as auditors and investment bankers) to verify sellers' statements. But such investigations and other devices are distinctly second-best solutions to legal and practical problems, and we will not establish a legal rule under which investors must resort to costly self-help approach of investigation on pain of losing the protection of the principal legal safeguard, the rule against fraud." See Edgington v. Fitzmaurice 29 Ch. 459 (1885).*

51. Beginning on or about April 5th 2007 and at various other times thereafter, Defendants met, joined together, planned, and conspired to transfer and conceal assets of Aurora, First Magnus, Citi, Mers for the purpose of rendering First Magnus insolvent and unable to pay his creditors, including Plaintiff, by creating fictitious debts owed by Aurora to Mers and by making electronic payments and transfers of tangible assets to JOHN DOE TRUST in purported payment of such debts.

52. All of the named Defendants agreed or understood that the purpose of their meetings and agreements was as described in Paragraph 51, understood that both their purpose and

their methods of achieving this purpose were unlawful and would result in injury to Plaintiff and others, and agreed and understood that each would act in concert with the others to achieve this purpose.

53. Beginning on or about April 5th 2007 and continuing until the present time, and in furtherance of the conspiracy described in Paragraph 51, Defendant, Mers, purportedly acting on behalf of Aurora, has issued checks in the amount of at least $119,000.00 written upon Aurora accounts, and transferred business inventory valued at not less than $119,000.00 to themselves and to Mers, Citi. Defendants, Aurora and Mers, have transferred, concealed, and dissipated the aforementioned funds and assets as they have received them, thus making it impossible or prohibitively expensive to trace and recover them. Defendant, First Magnus, presently claims to be insolvent and unable to satisfy its debts, including those owed to Plaintiff.

54. Defendants undertook the acts described in Paragraph 51 with malice and intent to injure Plaintiff, among others.

55. Defendant, First Magnus, Aurora, Mers, Citi undertook the acts described in Paragraph 49 for their unlawful personal gain, and did so neither for the benefit of, nor while acting in the role of lawful agent for, Aurora and Mers.

56. The acts described in Paragraph 51 were both unlawful and tortious, constituting conversion of corporate assets and the unlawful conveyance of property in defraud of creditors.

57. As a result of the acts described in Paragraph 51, Defendant, First Magnus, has been rendered insolvent and unable to pay its debts. Plaintiff has consequently been unable to satisfy the judgment against Defendant, First Magnus, described in Paragraph 3 or to otherwise recover upon the debts lawfully owed by Defendant. Plaintiff has incurred expenses in the amount of $16,000.00 in attempting to collect such debt and has suffered further loss in the amount of $159,000.00 as a result of the loss of the use of such funds. Plaintiff has thereby incurred pecuniary losses in the amount of $40,000.00.

58. Unless prevented by appropriate injunctive measures, Defendants will continue to inflict injury upon Plaintiff by continuing to conceal assets of Aurora and Mers and engaging in various deceptive measures intended to prevent discovery and recovery of such assets by lawful creditors of First Magnus including Plaintiff.

11

## COUNT I
## BANKING ACT OF 1933
### (Glass-Steagall Act Request for Reinstatement Repealed Parts)

59. Plaintiff repeats each and every allegation contained in Paragraph 1 through 58, as though fully set forth here.

60. Defendants at any time mentioned never disclosed its underwriting process associated with the corporate securities or disclose to the Plaintiff its incorporated affiliates i.e. 'private investment banks".

61. This Act provides strict policies preventing investment banking activities of commercial banks and forces them to withdraw completely from important segments of the investment banking business.

62. The legislative intend of this Act was that it would prevent securities affiliates from over extending themselves in investing and trading in speculative securities and related markets, which was intended to deter reckless behavior which leads to economic disaster.

## COUNT II
## SECURITIES FRAUD UNDER 15 U.S.C. § 6801 (The Gramm-Leach-Bliley Act)

63. Plaintiff repeats each and every allegation contained in Paragraph 1 through 58 specifically, as though fully set forth here.

64. Defendants failed to adhere to The Safeguard Rule which require plans to "protect clients", nonpublic information.

65. Defendants have not denoted at least 1. one employee to manage the safeguards 2. Constructing a "risk management" on each department handling nonpublic information 3. Develop, monitor, and test a program to secure the information 4. Change the safeguard as needed with the changes in how information is collected, stored, and used.

66. Defendant is obligated under this act and is forced to take a closer look at how they manage private data and to do a risk analysis on their current process.

67. Defendant manipulated and deceptively devised and or contrivance in contravention of such rules and regulations as the Commission set forth appropriately in the best interest of the public and for the protection of investor, also see, section *206B of the Gramm-Leach-Bliley Act.*

68. At all times mentioned Defendants did not provide or disclose to the Plaintiff the right in which a privacy notice gives the consumer a right to "opt out", Plaintiff did not enjoy this inherent right.

## COUNT III
## SECURITIES FRAUD UNDER SECURITIES EXCHANGE ACT OF 1934 § 10(b)-5

69. Plaintiff repeats each and every allegation contained in Paragraphs 1 through 58, as though fully set forth here.

70. Defendants in the ordinary course of business presented a material omission or misstatement in a proxy statement which is linked to the original transaction regarding the loan which was in turn converted to an investment account and Defendants such actions has resulted in economic harm to the Plaintiff.

71. As a result of the actions of defendants, plaintiff has been deprived of the specific securities that plaintiff wishes to retain, as set forth above.

72. The transaction in dispute included an untrue statement of material fact or omitting a material fact; *15 U.S.C. § 77q (a) (3)* engaged in a transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

73. *Securities Regulation 60.28(4)* cites, an insider in possession of material non-public information is prohibited by Federal Securities Exchange laws from trading on the information unless he makes public disclosure.

74. Defendants acted with scienter by way of their reckless business practices as a result of the investment trading associated with the loan, required a document to be filed with the Securities and Exchange Commission, which Defendants failed to produce, Plaintiff content on the prima facia evidence that the registrations statement does not exist.

## COUNT IV
## VIOLATIONS UNDER THE TRUST INDENTURE ACT OF 1939

75. Plaintiff repeats each and every allegation contained specifically in Paragraphs 1 through 58 as though fully set forth here.

76. Defendant engaged in the trading and selling of the Plaintiffs note and sold it and made a public offering without offering a trust indenture which conformed to any statutory provision.

77. The Act provides protection to investors by way of a trust indenture of its faithful duties in behalf of the purchasers of the securities.

13

78. Trustees or in other words fiduciaries are held to high standards of conduct under this Act, where the Defendants fall short.

79. Also this Act requires trustees to be a corporation with minimal combined capital and surplus, which is contrary to the Defendants actual and current situation.

80. Defendants at all times mentioned have produced reports and notices to the security holder the Plaintiff.

## COUNT V
## SECURITIES FRAUD UNDER SECURITIES EXCHANGE ACT OF 1934 § 12

81. Plaintiff repeats each and every allegation contained in Paragraphs 1 through 58 as though fully set forth here.

82. This cause arises from a connection with a public offering *See In re Syntex Corp. Securities Litigation, 855 F. Supp. 1086, 1098 (N.D. Cal 1994), aff'd 95 F. 3d 922 (9th Cir. 1996).*

83. Plaintiff did not consent or provide and application as set forth in *Sec. 12 (b)* of the Securities Exchange Act of 1934.

84. As a result of the actions of the defendants in purchasing the securities described above, plaintiff has had added to DENNIS J HUELBIG JRs' account securities that he did not wish to own, which have declined substantially in price since the purchase by defendants, which have resulted in margin calls from defendants to post additional margin, threats of sale by defendants for failure to post such margin, and sale of some of the securities by Defendants.

85. It was the Defendants that were obligated to provide the terms, position, rights and privileges of different classes of securities; furthermore, materials and contracts, balance sheets for at least (3) fiscal years; profit and loss statements, and further financial statements which the Commission may deem necessary or appropriate for the protection of investors.

86. Defendants had a "duty of care" to the Plaintiff and willfully neglected to exercise that duty.

## COUNT VI
## CIVIL CONSPIRACY UNDER 18 U.S.C. § 371

87. Plaintiff incorporates by reference the factual allegations contained in Paragraphs 51 through 58.

88. The factual misrepresentation and omission set forth in paragraphs 51-58 were material, in that there is a "substantial likelihood" that the Plaintiff would have considered the misrepresentation and omitted facts important in deciding whether to enter into the aforementioned agreement.

89. At the time, induced Plaintiff to purchase the subject shares of the said Fidelity Investments account, Plaintiff did not know that the material representations set forth in Paragraphs 51-58 were true or that the written prospectus or representation made to Plaintiff by Defendant regarding the fund existed by Defendant failing to disclose the material information set forth in Paragraphs 51-58.

90. Defendant and its officers, directors, agents and assigns conspired either to commit the offense against the Plaintiff and the United States by doing a lawful act by unlawful means, by doing the above mentioned overt act in pursuance of the conspiracy, and damages the Plaintiff as a result of the acts done in furtherance of the conspiracy to defraud, also see *Pub.L. 103-322, 108 Stat., United States v. Walter, 1923, 44 S. Ct. 10, 263 U.S. 15, 68 L. Ed. 137.*

## COUNT VII
## RESCISSION (Recoupment Claim)
## (Huelbig v. Aurora Loan Services, L.L.C.)

91. Plaintiff entered into a Mortgage and "Note" transaction with the Defendants which has raised questions as to the financial practices and effect of the existing documents.

92. The parties closed on the Mortgage June 26th 2006.

93. The existence of fraud, mutual mistake, false representations, impossibility of performance, or other grounds are appropriate for rescission or cancellation;

94. Plaintiff has rescinded the contract and notified the other party to the contract of such rescission;

95. Plaintiff has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible;

96. Lastly, that the Plaintiff has no adequate remedy at law.

## COUNT VIII
## SCIENTER (INTENT TO MISLEAD)

97. Plaintiff incorporates by reference the factual allegations contained in Paragraph 1 through 58.

98. At all relevant times mentioned in the complaint the Defendants at no time mentioned the truth as to the securitized transaction which took place on Wall Street, then further alleged that the original "Note" was destroyed or was lost or stolen.

99. Plaintiff has repeatedly in the past requested for verification of a debt which was subject to collection, when in fact was contrary, therefore, misrepresented as a debt and not as a security which was intended to deceive the Plaintiff.

100. Plaintiff has made efforts to mitigate the harm caused, when the Defendants committed misrepresentation, therefore, damages may be recovered, for failing to offset the account by liquidating the Fidelity Account.

101. During the intercourse of the transaction Defendants recklessly provided covenants in their "Mortgages" which were designed to mislead consumers by stating the "Note" may be sold to multiple lenders and services multiple times, however, failed to specifically state how many times it was to be transferred and to whom; the contract in dispute lacks the specificity as to any association with Wall Street.

102. Defendants "reckless" behavior is unfavorable to the Plaintiff and to his detriment upon which they relied.

103. Defendant's reckless actions and dilatory conduct also conflict with state and federal usury laws, as well as, Fair Debt Collection Practices.

## PRAYER

Plaintiff requests judgment against defendants, jointly and severally:

A. For damages in the sum of $300,020.00, plus such further sums as damages as may in the further, pending the trial of this action, occur;

B. For prejudgment interests as provided by law;

C. For punitive or exemplary damages in an amount no less than $25,000.00. Against defendant Aurora, First Magnus, Citi, and Mers in an amount no less than $15,000.00 against the above mentioned parties;

D. Declare Defendants to have engaged in a civil conspiracy to inflict injury upon the Plaintiff, and to therefore be jointly and severally liable for all damages awarded by the Court without allocation, apportionment, or limitation of liability;

E. Enjoin Defendants from committing any further acts in furtherance of said conspiracy;

F. Award Plaintiff compensatory and incidental damages in an amount not less than $150,000.00;

G. Award Plaintiff treble damages in such amount as the Court may deem appropriate to penalize Defendants for their intentional and malicious acts of misconduct;

H. Award Plaintiff the costs of this action and any subsequent appeal, together with such other relief, not necessarily limited to pecuniary relief, as the Court may deem Plaintiff entitled to receive;

I. Foreclose on the Security Interest;

J. For reasonable attorney's fees;

K. For cost of suit; and

L. For any and all other further relief may be proper.

Date: 11/10/2010

Respectfully Submitted,

_____

HUELBIG DOC PREP CORPORATION
Dennis Huelbig, Agent, Trustee
110 Wall Street, 11th FL.
New York, N.Y. 10005
212-709-8141

17

## DEMAND FOR JURY TRIAL

Plaintiff moves this court pursuant to Fed.R.Civ.P. Rule 38 *"Jury Trial of Right"* and thereby demand a Jury Trial. The undersigned certifies that a copy hereof has been furnished to the parties listed in the Certificate of Service.

By: _____

Dennis Huelbig, Authorized Agent, Trustee

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by U.S. Mail, Hand Delivery, and Process Server to the below mentioned on this _10_, day of _Nov._, 2010.

AURORA LOAN SERVICES, L.L.C.
2617 COLLEGE PARK
SCOTTSBLUFF, NEBRASKA 69363-1706

AURORA LOAN SERVICES, L.L.C.
10350 PARK MEADOWS DRIVE
LITTLETON, CO. 80124

CITI MORTGAGE
1000 TECHNOLOGY DRIVE
O'FALLON, MO. 63368

FIRST MAGNUS FINANCIAL
5210 E. WILLIAMS CIRCLE, STE 750
TUCSON, AZ. 85711

FMR, L.L.C. FIDELITY INVESTMENTS
82 DEVONSHIRE STREET
BOSTON, MA. 02109-3605

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NY. 10007-1312

SEC DIVISION OF ENFORCEMENT
100 F STREET
N.E. WASHINGTON, D.C. 20549

SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
THREE WORLD FINANCIAL CENTER, SUITE 400
NEW YORK, NY. 10281

By: _____

Dennis Huelbig, Authorized Agent, Trustee

## **VERIFICATION**

I, Dennis-James: Huelbig am the Authorized Representative and Trustee for the plaintiff in the above entitled action. I have read the foregoing Amended Complaint. The facts stated therein are within my knowledge and are true and correct, except those matters stated on information and belief, and, as to those, I believe them to be true and correct.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed this ___/0___ day of November, 2010, at Manhattan, New York.

By: _____

Dennis Huelbig, Authorized Agent, Trustee

20

## FOOTNOTES

(1) Lewis, Holden (18 April 2007). "Moral hazard' helps shape mortgage mess"
Bankrate.com

(2) "Originate-to-Distribute" model and the subprime mortgage crisis
http://papers.ssrn.com

(3) Demyanyk, Yuliya; Van Hemert, Otto (19 August 2008) "Understanding the Subprime
Mortgage Crisis". Working Paper Series. Social Science Electronic Publishing

(4) "Nicole Gelinas (1 January 2009) "Can the Fed's Uncrunch Credit?"
City-journal.org

(5) Brookings Institute- U.S. Financial and Economic Crisis June 2009 PDF Page 14
http://www.brookings.edu/papers/2009/0615_economic_crisis_bailey_elliott.aspx

(6) http://www.federalreserve.gov/newsevents/testimony/bernanke20090224a.htm

(7) Salmon, Felix (http://www.felixsalmon.com) (2009-02-23) "Recipe for Disaster: The
Formula that Killed Wall Street"

(8) "Lessons from the Crisis" (http://www.pimco.com) US House of Representatives
Committee on Government Oversight and reform (22 October 2008)
http://oversight.house.gov

(9) Labaton, Stephen (2008-09-27). "SEC Concedes Oversight Flaws"
(http://www.nytimes.com/2008/09/27sec.html?em.

(10) Labaton, Stephen (2008-10-03). "The Reckoning"
(http://www.nytimes.com/2008/10/03/business/03sec/html?em

**C/o HUELBIG DOC PREP CORPORATION**
**Dennis Huelbig, Authorized Agent, Trustee**
**110 Wall Street, 11th FL.**
**New York, N.Y. 10005**
**212-709-8141**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**DENNIS J. HUELBIG JR.,**
                              **Plaintiff,**

                    **-against-**

**AURORA LOAN SERVICES L.L.C., FIRST**
**MAGNUS FINANCIAL, CITI MORTGAGE,**
**and MORTGAGE ELECTRONIC**
**REGISTRATION SYSTEM, INC.**
                              **Defendant.**

---

**No. 10 Civ. 06215 (RJH) (THK)**


**AFFIRMATION OF SERVICE**

I, Dennis-James: Huelbig, Authorized Agent, Trustee and Attorney in Fact for Plaintiff, **declare under penalty of perjury** that I have served a copy of the attached Plaintiff's Amended Complaint, Plaintiffs Objection to Defendants Motion to Dismiss, Plaintiffs First Request for Judicial Notice and Affirmation In Opposition to Motion upon AURORA LOAN SERVICES, L.L.C., C/o: William Craig Sandelands, counsel for Defendants 1 and 2 including M.E.R.S. whose address is Four Gateway Center, 100 Mulberry Street, Newark, NJ 07012 and CITI MORTGAGE, C/o: Jordan Michael Smith, counsel for Defendant 3 whose address is NYC Law Division, 100 Church Street, New York, NY 10007 was served by U.S. Mail Express Mail.

Date: _11/10/2010_                    Respectfully Submitted,

                              _____

                              **HUELBIG DOC PREP CORPORATION**
                              Dennis Huelbig, Agent, Trustee
                              110 Wall Street, 11th FL.
                              New York, N.Y. 10005
                              212-709-8141

2012 NOV 16  P 12: 02
PRO SE OFFICE
RECEIVED

1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by

U.S. Mail, Hand Delivery, and Process Server to the below mentioned on this _/0_, day of

_Nov._, 2010.


AURORA LOAN SERVICES, L.L.C.
C/o: William Craig Sandelands
Tompkins, McGuire, Wachenfeld & Barry
Four Gateway Center, 100 Mulberry Street
Newark, NJ 07012

CITI MORTGAGE
C/o Jordan Michael Smith
NYC Law Department
100 Church Street
New York, NY 10007


By: _____

Dennis Huelbig, Authorized Agent, Trustee